|  |  |  |
|---|---|---|
| Ryder Clips Unlimited, Inc., | ) | Case No.: 24-cv-5561 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Judge: |
|  | ) |  |
| THE PARTNERSHIPS and | ) |  |
| UNINCORPORATED ASSOCIATIONS | ) |  |
| IDENTIFIED ON SCHEDULE A, | ) | Magistrate: |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

## COMPLAINT

Ryder Clips Unlimited, Inc. ("Plaintiff") hereby files this Complaint for, *inter alia*, trademark infringement, counterfeiting, and related claims against Defendants, on personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of others:

### THE PARTIES

1.  Plaintiff is a Florida corporation having a principal place of business at the address listed in the trademark registration attached in Exhibit 1 and owns the registered trademark SHIFT SOCK ("Mark") being infringed by a cabal of global infringers intent on exploiting unknowing online consumers who, in the age of a global pandemic, cannot meaningfully inspect items to determine whether they are authentic or counterfeit, which is of utmost importance for Plaintiff's motorcycle accessory product. This infringing behavior harms Plaintiff.

2.  Defendants identified in Schedule A, attached under seal as Exhibit 2, are all believed to be individuals and unincorporated business associations who, upon information and

belief, reside in foreign jurisdictions. The true names, identities, and addresses of Defendants are currently unknown.

3.  Defendants conduct their illegal operations through fully interactive commercial websites hosted on various e-commerce sites, such as Amazon, eBay, Wish, DHGate, and AliExpress ("Infringing Websites" or "Infringing Webstores"). Each Defendant targets consumers in the United States, including the State of Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit and/or infringing products that violate Plaintiff's intellectual property rights ("Counterfeit Products") to consumers within the United States, including the State of Illinois and the Northern District of Illinois. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

4.  Through the operation of their Infringing Webstores, Defendants are directly and personally contributing to, inducing and engaging in the sale of Counterfeit Products as alleged, often times as partners, co-conspirators, and/or suppliers.

5.  Upon information and belief, Defendants are an interrelated group of counterfeiters and trademark infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products. They each produce auto parts produced or fabricated at the same facilities.

6.  Defendants intentionally conceal their identities and the full scope of their counterfeiting operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal counterfeiting and infringing operations. The identities of these Defendants are presently unknown.

7.  Defendants have created the Defendant Internet Stores, operate under one or more aliases, and are advertising, offering for sale and selling Unauthorized Products to unsuspecting consumers. Defendant Internet Stores share unique identifiers, establishing

a logical relationship between them and suggesting that Defendants' counterfeiting

actions arise out of the same transaction or occurrence, or series of transactions or

occurrences.

8.  Defendants are primarily Chinese, or connected to other Chinese entities and defendants

by all marketing counterfeit products and/or market their products under the registered

trademarks of Plaintiff.  On information and belief, all Defendants source their goods

from a common manufacturer or consortium of manufacturers under the direction or

influence of local or national governments.

## JURISDICTION AND VENUE

9.  This is an action for trademark counterfeiting and trademark infringement, and unfair

competition and false designation or origin arising under the Trademark Act of 1946, 15

U.S.C. §§ 1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public

Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of

1996, Pub. L. 104-153 (July 2, 1996), and the Prioritizing Resources and Organization for

Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), and

for unlawful and deceptive acts and practices under the laws of the State of Illinois.

10.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332,

and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121l.  This Court has jurisdiction,

pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over

Plaintiffs' claims for unlawful and deceptive acts and practices under the laws of the

State of Illinois.

11.  This Court has personal jurisdiction over Defendants in that they transact business in the

State of Illinois and in the Northern District of Illinois.

12.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 in that the Defendants are

entities or individuals subject to personal jurisdiction in this District.  Venue is also

proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants directly target business activities towards consumers in the State of Illinois.

### BACKGROUND FACTS

13.    Plaintiff is engaged in the business of manufacturing, distributing, and retailing products bearing the SHIFT SOCK Mark throughout the world, including within the Northern District of Illinois (collectively, "Plaintiff's Products). Defendants' sales of similar and substandard copies of Plaintiff's Products featuring Asserted Trademark ("Counterfeit Products") are in violation of Plaintiff's intellectual property rights and are irreparably damaging Plaintiff.

14.    Plaintiff is the owner of all rights, title, and interest in and to, *inter alia*, the SHIFT SOCK Mark in Exhibit 1. The registrations are valid, subsisting, unrevoked, and uncancelled. The registrations for the Marks constitute *prima facie* evidence of validity and of Plaintiff's exclusive rights to use the Marks pursuant to 15 U.S.C. § 1057(b). A genuine and authentic copy of the U.S. federal trademark registration certificate for the SHIFT SOCK Mark, as well as recorded assignment, are attached as Exhibit 1.

15.    Plaintiff's brand, symbolized by the SHIFT SOCK Mark, is a recognized trademark for Plaintiff's Products. As detailed below, Plaintiff has been using the SHIFT SOCK Mark in connection with the advertising and sale of the Plaintiff's Product in interstate commerce, including commerce in the State of Illinois and the Northern District of Illinois.

16.    The SHIFT SOCK Mark has been widely promoted, both in the United States and throughout the world. The whole of the consuming public in this market associates the SHIFT SOCK Mark with Plaintiff, but also recognize that Plaintiff's Product sold in the United States originates exclusively with Plaintiff due to the SHIFT SOCK Mark.

17. As of the date of this filing, Plaintiff's Product is sold throughout the nation with various national and local retail outlets and stores.

18. Plaintiff maintains quality control standards for all of Plaintiff's products, including those sold under the SHIFT SOCK Mark. Genuine Asserted products are distributed through the internet from Plaintiff's own websites or their authorized Amazon.com webstore of the same name.

19. The SHIFT SOCK Mark is a highly visible and distinctive worldwide symbol of excellence in quality and uniquely associated with Plaintiff and, as a result, Plaintiff's Products bearing the SHIFT SOCK Mark has achieved unparalleled recognition among motorcycling and biking enthusiasts, resulting in substantial revenues associated with the Plaintiff's Products.

20. The SHIFT SOCK Mark has never been assigned or licensed to any of the Defendants in this matter.

21. The SHIFT SOCK Mark is a symbol of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

22. Further, Plaintiff has expended substantial time, money, and other resources developing, advertising, marketing, and otherwise promoting the SHIFT SOCK Mark.

23. Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of the SHIFT SOCK Mark, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

24. Recently, and for a while in the past, Plaintiff has identified the SHIFT SOCK Mark on the Infringing Webstores and felt the impact of Counterfeit Products designed to resemble authorized retail Internet stores selling the genuine Asserted Products that

Defendants had reproduced, displayed, and distributed without authorization or license from Plaintiff in violation of the SHIFT SOCK Mark.

25. Defendants' use of the SHIFT SOCK Mark on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

26. Defendants have manufactured, imported, distributed, offered for sale, and sold Counterfeit Products using the SHIFT SOCK Mark and continue to do so.

27. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the SHIFT SOCK Mark in connection with the advertisement, offer for sale, and sale of the Counterfeit Products, through, *inter alia*, the Internet. Counterfeit Products are inauthentic products sold by Defendant under the SHIFT SOCK Mark. The Plaintiff did not manufacture, inspect, or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution. Each Infringing Webstore offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Products into the United States, including Illinois.

28. Defendants falsely advertise the sale of authentic Asserted Products through the Infringing Webstores. Defendants' Infringing Webstore listings appear to unknowing consumers to be legitimate web stores and listings, authorized to sell genuine SHIFT SOCK Mark Products.

29. Defendants also deceive unknowing consumers by using the SHIFT SOCK Mark without authorization within the content, text, and/or meta tags of the listings on Infringing Webstores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for SHIFT SOCK Mark Product and in consumer product searches within the Webstores.

30.     Indeed, U.S. Customs and Border Protection ("CBP") reports in a January 2020 publication

on counterfeiting that commonly owned and/or interrelated enterprises have many online

marketplace profiles that appear unrelated:

> Platforms generally do not require a seller on a third-party marketplace to
> identify the underlying business entity, nor to link one seller profile to other
> profiles owned by that same business, or by related businesses and owners. In
> addition, the party that appears as the seller on the invoice and the business or
> profile that appears on the platform to be the seller, may not always be the
> same. This lack of transparency allows one business to have many different
> profiles that can appear unrelated.

31.     Defendants go to great lengths to conceal their true identities and often use multiple

fictitious names and addresses to register and operate the Infringing Webstores.  Upon

information and belief, Defendants regularly create new Webstores on various platforms

using the identities listed in Exhibit 2 of the Complaint, as well as other unknown

fictitious names and addresses.  Such registration patterns are one of many common

tactics used by the Defendants to conceal their identities, the full scope and interworking

of their illegal counterfeiting operations, and to prevent the Infringing Webstores from

being disabled.

32.     Further, counterfeiters, such as Defendants, also consult and post information to "seller-

defense" websites developed and maintained to provide counterfeiters early notice of

recently filed lawsuits, so assets and evidence can be transferred, hidden or destroyed

before a temporary asset restraint is instituted.

33.     Even though Defendants operate under multiple fictitious names, there are numerous

similarities among the Defendant Internet Stores. For example, the Defendant Internet

Stores use equivalent language to sell Unauthorized Products, particularly using a

machine translated version of the Mark from English into Chinese and back into English

again, often chopped up or listed as "shifter sock" in their listing title or description (or

both).

34.     In addition, the Unauthorized Products for sale in the Defendant Internet Stores bear

        similarities and indicia of being related to one another, suggesting that the Unauthorized

        Products were manufactured by and come from a common source and that, upon

        information and belief, Defendants are interrelated.  For example, there are shared

        patterns, shapes, and packaging involved in Defendant's products that match the two

        identified common manufacturers.  *See* Exhibit 3.

35.     The Defendant Internet Stores also include other notable common features, including

        common payment methods, identically or similarly appearing products, and identical or

        similarly priced items.

36.     Upon information and belief, Defendants will continue to register or acquire listings for

        the purpose of selling Counterfeit Goods that infringe upon the SHIFT SOCK Mark

        unless preliminarily and permanently enjoined.

37.     Plaintiff has no adequate remedy at law.

## COUNT ONE
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGMENT
### (15 U.S.C. § 1114)

38.     The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth

        herein.

39.     The Plaintiff's SHIFT SOCK Mark and the goodwill of the business associated with it in

        the United States and throughout the world are of great and incalculable value.  The

        SHIFT SOCK Mark is highly distinctive and has become universally associated in the

        public mind with Plaintiff's Products.  Consumers associate the Plaintiff's SHIFT SOCK

        Mark with the Plaintiff as the source of the very highest quality products in the Plaintiff's

        industry.

40.   Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's SHIFT SOCK Mark and the fact that Defendants' Counterfeit Products are sold using marks identical or confusingly similar to the Plaintiff's SHIFT SOCK Mark, the Defendants have manufactured, distributed, offered for sale and/or sold the Counterfeit Products to the consuming public in direct competition with Plaintiff's sale of genuine Plaintiff's Products, in or affecting interstate commerce.

41.   Defendants' use of copies or approximations of the Plaintiff's SHIFT SOCK Mark in conjunction with Defendant's Counterfeit Products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive the public into believing the Counterfeit Products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

42.   The Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

**COUNT TWO**
**UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. § 1125(a))**

43.   The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

44.   The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

45. By misappropriating and using the Plaintiff's SHIFT SOCK Mark and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

46. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

47. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's SHIFT SOCK Mark, genuine product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

48. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

## COUNT THREE
## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES
### (815 ILCS 510)

49. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

50. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

51. By misappropriating and using the Plaintiff's SHIFT SOCK Mark and trade names, Defendants misrepresent and falsely describe to the general public the origin and source

of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

52.    Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized or approved by the Plaintiff, all to the Defendants' profit and to the Plaintiff's great damage and injury.

53.    Defendants' aforesaid acts are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 et seq., in that Defendants' use of the Plaintiff's Mark, genuine product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

54.    Plaintiff have no adequate remedy at law and, if the Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants in favor of the Plaintiff on all counts as follows:

1.    That Defendants, their affiliates, officers, agents, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

   (i)    using the Plaintiff's SHIFT SOCK Mark or any reproduction, counterfeit, copy or colorable imitation of the Plaintiff's Products in connection with the distribution, advertising, offer for sale and/or sale of counterfeit Plaintiff's Products; and

   (ii)    passing off, inducing or enabling others to sell or pass off any Counterfeit Products as genuine products made and/or sold by the Plaintiff; and

   (iii)    committing any acts calculated to cause consumers to believe that Defendants'

Counterfeit Products are those sold under the authorization, control, or

supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected

with Plaintiff;

(iv)    further infringing the Plaintiff's SHIFT SOCK Mark and damaging Plaintiff's

goodwill;

(v)     competing unfairly with Plaintiff in any manner;

(vi)    shipping, delivering, holding for sale, distributing, returning, transferring or

otherwise moving, storing or disposing of in any manner products or inventory

not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or

offered for sale, and that bear the SHIFT SOCK Mark or any reproductions,

counterfeit copies, or colorable imitations thereof;

(vii)   using, linking to, transferring, selling, exercising control over, or otherwise

owning or operating the Infringing Webstores, listings, or any other domain name

that is being used to sell or is the means by which Defendants could continue to

sell Counterfeit Products;

(viii)  operating and/or hosting websites at the Infringing Webstores and any other

domain names registered or operated by Defendants that are involved with the

distribution, marketing, advertising, offering for sale, or sale of any product

bearing the Plaintiff's SHIFT SOCK Mark or any reproduction, counterfeit copy

or colorable imitation thereof that is not a genuine product or not authorized by

Plaintiff to be sold in connection with the Plaintiff's SHIFT SOCK Mark;

(ix)    registering any additional domain names that use or incorporate any of the

Plaintiff's SHIFT SOCK Mark; and,

(x)     possessing any product bearing the Plaintiff's SHIFT SOCK Mark or any

reproduction, counterfeit copy or colorable imitation thereof that is not a genuine

product or not authorized by Plaintiff to be sold in connection with the Plaintiff's

SHIFT SOCK Mark. As part of compliance with this provision, we ask that

Defendants or those who possess Defendants' infringing goods, segregate and

destroy infringing goods.

2.     That Defendants, within ten days after service of judgment with notice of entry thereof

upon them, be required to file with the Court and serve upon the Plaintiff's a written report under

oath setting forth in detail the manner in which Defendants have complied with any and all

injunctive relief ordered by this Court.

3.     Entry of an order that, upon Plaintiff's request, those in privity with Defendants and those

with notice of the injunction, including any Internet search engines, Webstore hosts or their

administrators that are provided with notice of the injunction, cease facilitating access to any or

all webstores through which Defendants engage in the sale of Counterfeit Products using the

Plaintiff's SHIFT SOCK Mark;

4.     That Defendants account for and pay over to Plaintiff any and all profits realized by

Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of

damages for infringement of the SHIFT SOCK Mark be increased by a sum not exceeding three

times the amount thereof as provided by law as provided by 15 U.S.C. § 1117;

5.     In the alternative, that Plaintiff be awarded statutory damages of One Hundred Thousand

United States Dollars and No Cents ($100,000.00) for each and every use of the Plaintiff's

SHIFT SOCK Mark counterfeited by each Defendant.

6.     That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

7.     Grant Plaintiff such other and further legal relief as may be just and proper.

Dated: <u>July 2, 2024</u>    Respectfully Submitted,

By:  <u>  /s/ Rishi Nair              </u>
Rishi Nair
ARDC # 6305871
Keener & Associates, P.C.
161 N. Clark Street, Suite #1600
Chicago, IL 60601
(312) 375-1573
rishi.nair@keenerlegal.com