**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Ryder Clips Unlimited, Inc., | ) | Case No.: 24-cv-5561 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge: Honorable Sara L. Ellis |
| | ) | |
| THE PARTNERSHIPS and | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE A, | ) | Magistrate: Hon. Keri L. Holleb Hotaling |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A (1) TEMPORARY RESTRAINING ORDER, (2) ASSET RESTRAINING ORDER, (3) EXPEDITED DISCOVERY ORDER, AND (4) SERVICE OF PROCESS BY EMAIL

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................1

II.    STATEMENT OF FACTS.................................................................................3

     A.    Plaintiff's Intellectual Property.................................................................3

     B.    Defendants' Illegal Activities...................................................................3

III.    ARGUMENT....................................................................................................5

     A.    This Court Has Jurisdiction Over the Parties and Subject Matter..........6

     B.    A Temporary Restraining Is Customary and Appropriate .....................7

     C.    Standard for Temporary Restraining Order and Preliminary Injunction................8

     D.    Plaintiff Will Likely Succeed on the Merits.........................................10

         i.    Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claims................................................................10

         ii.    Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim................................................................................13

         iii.    Plaintiff Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practice Act Claim...........................................................14

     E.    There Is No Adequate Remedy at Law and Plaintiff Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief.........................15

     F.    The Balancing of Harms Tips in Plaintiff's Favor.................................16

     G.    Issuance of the Injunction If in the Public Interest................................17

IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE.........................................18

     A.    A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Illegal Use of Plaintiff's Intellectual Property is Appropriate............................................................................................19

     B.    An Order Preventing the Fraudulent Transfer of Assets Is Appropriate...............20

V.    PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY.......................................23

VI.    SERVICE OF PROCESS BY EMAIL IS WARRANTED IN THIS CASE.....................25

VII.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF.........................................29

VIII.    CONCLUSION..............................................................................................30

**CASES**

*Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992)..................................................9

*Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665 (N.D. Ill. 1998)..............................14

*Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.*, 482 F. Supp. 2d 1065 (E.D. Wis. 2007)...............................................................................................................................................29

*Burger King Corp. v. Majeed*, 805 F. Supp. 994 (S.D. Fla.1992)................................................16

*CAE, Inc. v. Clean Air Eng'g Inc.*, 267 F.3d 660 (7th Cir. 2001)...........................................11, 15

*Century Home Entmt. Inc. v. Laser Beat, Inc.*, 859 F. Supp. 636 (E.D.N.Y. 1994).....................18

*Chanel, Inc. v. Does 1-172*, No. 2:10-cv-02684-STA-dkv (W.D. Tenn. Nov. 4, 2010) (unpublished)................................................................................................................................20

*Chanel, Inc. v. Paley*, No. 3:09-cv-04979-MHP (N.D. Cal. Nov. 13, 2009) (unpublished).........29

*Chanel, Inc. v. Zhixian*, No. 0:10-cv-60585-JIC (S.D. Fla. Apr. 21, 2010) (unpublished)...........29

*Coach, Inc., et al. v. Does 1-100*, No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished).......................................................................................................................*passim*

*Coach Inc., et al. v. The Treasure Box, Inc.*, No. 3:11 CV 468, 2013 U.S. Dist. LEXIS 76607 (N.D. Ind. May 31, 2013).............................................................................................................10

*CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002).........................................................21

*Deckers Outdoor Corp. v. Does 1-55*, No. 1:11- cv-00010 (N.D. Ill. Feb. 3, 2011) (unpublished)..................................................................................................7, 19, 22, 26

*Deckers Outdoor Corp. v. Does 1-55, et al.*, No. 1:11-cv-00010, (N.D. Ill. Oct. 14, 2011).......6, 7

*Deckers Outdoor Corp. v. Does 1-101*, No. 1:11-cv- 07970 (N.D. Ill. Nov. 15, 2011) (unpublished)..................................................................................................7, 19, 22, 26

*Deckers Outdoor Corp. v. Does 1-1,281*, No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished)................................................................................................19, 22, 26, 29

*Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished).......................................................................................................*passim*

*Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)......................................................22

*Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, 2010 WL 4877708 (N.D. Ill. 2010)..................................................................................................................................6

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376 (7th Cir. 1996)..................................11

*Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000).........................*9, 11, 14,17*

*Farouk Sys., Inc. v. Eyou Int'l Trading Co., Ltd.*, No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (unpublished)...........................................................................................................*passim*

*Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463 (E.D. Mich. 2000)...................7, 20

*G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985 (7th Cir. 1989)..............11

*Gallery House, Inc. v. Yi*, 582 F. Supp. 1294 (N.D. Ill. 1984)......................................16

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d 1134 (7th Cir. 1994)..................................................................................................................................15

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980).......................................................23

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA*, 549 F.3d 1079 (7th Cir. 2008)........10

*Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999).......................22

*Gucci Am., Inc. v. Curveal Fashion*, No. 1:09-cv-08458-RJS-THK (S.D.N.Y. Oct. 9, 2009) (unpublished)...........................................................................................................29

*Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453 (7th Cir. 2010)........................29

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325 (7th Cir. 1977).....14

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411 (4th Cir. 1999)...............28

*Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010)..............................................6

*Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018 (7th Cir. 1979)...................15

*In re LDK Solar Secs. Litig.*, 2008 WL 2415186 (N.D. Cal. Jun. 12, 2008)...............28

*In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009)..............................28

*In re Vuitton et Fils S.A.*, 606 F.2d 1 (2d Cir. 1979).....................................................7

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079 (7th Cir. 1988)..............15

*James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266 (7th Cir. 1976).....................17

*Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584 (D.D.C. Jan. 30, 2008)........................................................................................................................27

*Kraft Food Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942 (N.D. Ill. 2002)....................................20

*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585 (D.D.C. 1994)...................................16

*Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360 (7th Cir.1995)....................................................12

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982 (11th Cir. 1995).........................21

*Long v. Board of Educ., Dist. 128*, 167 F.Supp.2d 988 (N.D. Ill. 2001)........................................8

*Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892 (N.D.Ill. Nov. 8, 2005)....................................................................................................................................21, 23

*MacLean- Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008)..........................................................................................................26

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473 (D.D.C. 1996)..............................................................................................................................................16

*Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111 (7th Cir. 1997)................14

*Neopost Industrie B.V. v. PFE Int'l Inc.*, 403 F. Supp. 2d 669 (N.D. Ill. 2005)....................10, 13

*Oakley, Inc. v. Does 1-100;* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished)..........*passim*

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380 (1978)...................................23

*Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560 (E.D. Tenn. 2004).....26, 28

*Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808 (7th Cir. 2002)................................15

*Purdue Research Found. v. Sanofi- Sythelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003)......................6

*Rathmann Grp. v. Tanenbaum*, 889 F.2d 787 (8th Cir. 1989).......................................................28

*Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424 (7th Cir. 2001).......................................................14

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552 (9th Cir. 1992)................................21

*Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, 87 F.Supp.3d 874 (N.D. Ill. 2015)..............................................................................................................................................8

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002)......................................25, 27

*Shashi, Inc. v. Ramada Worldwide, Inc.*, No. 7:05-cv- 00016-JGW-mfu, 2005 WL 552593 (W.D. Va. Mar. 1, 2005)..................................................................................................................................17

*Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567 (N.D. Ill. 1994)..................................................13

*Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914 (7th Cir. 1950).......................................................17

*The Nat'l Football League v. Chen*, No. 1:11-cv-00344-WHP (S.D.N.Y. Jan. 31, 2011) (unpublished)...........................................................................................................................7, 29

*The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*, No. 1:10-cv-01630-AKH (S.D.N.Y. Mar. 16, 2010) (unpublished)......................................7, 20, 22, 26

*Tory Burch LLC v. Does 1-100*, No. 1:12-cv-07163 (N.D. Ill. Sept. 14, 2012)....................*passim*

*Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.*, No. 1:10-cv-09336-DAB (S.D.N.Y. January 4, 2011) (unpublished)...........................................................................................7, 20, 22

*Tory Burch LLC v. Zhong Feng, et al.*, No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012).........*passim*

*Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029 (N.D. Ill. 2001)..................7, 12

*True Religion Apparel, Inc. v. Does 1-100;* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished).....................................................................................................................*passim*

*True Religion Apparel, Inc. v. Xiaokang Lee*, No. 1:11-cv-08242-HB (S.D.N.Y. Nov. 18, 2011) (unpublished).................................................................................................................................29

*Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001)............................................9, 16

*uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421 (7th Cir. 2010)..................................................6

*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812 (N.D. Ill. Dec. 21, 2007)................23

*Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202 (7th Cir. 1990)....................13

*Wesley-- Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862 (7th Cir.1983).......................................................................................................................................14

## STATUTES

15 U.S.C. §1051..............................................................................................................................5

15 U.S.C. § 1114(1).......................................................................................................................10

15 U.S.C. § 1115(a).......................................................................................................................15

15 U.S.C. § 1116(a) ................................................................................................14, 18

15 U.S.C. § 1117 .....................................................................................................21, 23

15 U.S.C. § 1125(a) ................................................................................................13, 14

28 U.S.C. §1331 ............................................................................................................6

28 U.S.C. §§1338(a)-(b) ...............................................................................................5

28 U.S.C. §1367(a) .......................................................................................................5

28 U.S.C. § 1391 ...........................................................................................................5

FED. R. CIV. P. 26(b)(2) ..............................................................................................23

FED. R. CIV. P. 4(f)(3) ..........................................................................................passim

FED. R. CIV. P.  64 .......................................................................................................23

FED. R. CIV. P. 65 ..................................................................................................23, 24

FED. R. CIV. P. 65(b) .....................................................................................................8

FED. R. CIV. P.  65(d)(2)(C) ........................................................................................15

735 ILCS 5/2-209(a)(2) .................................................................................................6

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Plaintiff Ryder Clips Unlimited, Inc.  ("Ryder Clips" or "Plaintiff") brings this action against Defendants, as identified in Exhibit 2 of the Complaint (filed under seal, Dkt. # 2) (collectively, the "Defendants") for federal trademark infringement and counterfeiting (Count I), unfair competition and false designation of origin (Count II), and Illinois Uniform Deceptive Trade Practices (815 ILCS 510) (Count III).  As alleged in the Complaint, Plaintiff owns U.S. Trademark Registration No. 6,656,018 for SHIFT SOCK (hereafter SHIFT SOCK Mark).

Plaintiff has used the SHIFT SOCK Mark since at least April 1, 2008 and it has gained tremendous popularity owing to the great need for safe motorcycle accessories that look great and perform a utilitarian benefit for bikers, namely protecting their feet and/or footwear from harm due to the use of a motorcycle.

The Defendants are illegally promoting, copying, manufacturing, advertising, marketing, distributing, offering for sale, and selling counterfeit Products versions of Plaintiff's SHIFT SOCK Products under the Plaintiff's registered SHIFT SOCK Mark, or confusingly similar derivatives (e.g. "SHIFTER SOCK" or "SHIFT LEVER SOCK"), through various websites/webstores designed to mislead consumers that the Products sold are genuine SHIFT SOCK Products.

The Defendants use online merchant platforms to virtually peddle to unknowing consumers SHIFT SOCK Marked goods that are low-quality, unlicensed counterfeits. Defendants attempt to avoid liability by concealing their identities and true nature of their criminal counterfeiting operation by utilizing pseudonyms and failing to disclose that they are not selling legitimate SHIFT SOCK goods but instead are offering substandard and unlicensed knock-offs sourced from a common manufacturer located in China.

1

Upon information and belief, each of the Defendants, are working in active concert with an unknown manufacturing entity located in China to knowingly and willfully make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use the same infringing product. Plaintiff has linked the defendants through a common manufacturer located in China and offering thousands of copies of the infringing goods, which was attached as Exhibit 3 to Plaintiff's Complaint (Docket No. 1-3). These each match Defendants' offerings and show a common source located in China.

Plaintiff is forced to file these actions to combat Defendants' illegal counterfeiting of the Plaintiff's goods and the registered SHIFT SOCK Mark, as well as to protect unknowing consumers from purchasing low-quality counterfeits over the Internet through the Defendants.

Defendants directly target their unlawful business activities towards consumers in Illinois and cause harm to Plaintiff's business and interests within the Northern District of Illinois, and have caused and will continue to cause irreparable injury to Plaintiff. Defendants deceive the public by trading upon Plaintiff's reputation and goodwill by using the SHIFT SOCK Mark in their webstore counterfeit product listings websites to sell their goods. Defendants should not be permitted to continue their unlawful activities in trading on the goodwill and trademark rights of the Plaintiff to sell cheap knock-offs to unsuspecting consumers within Illinois and the nation.

As such, Plaintiff respectfully requests that this Court issue, *ex parte*, (1) a temporary restraining order against Defendants enjoining the manufacture, importation, distribution, offer for sale, and profiting from the sale of Plaintiff's Products; (2) an order temporarily disabling the Infringing Webstore listings pending the issuance of a final judgment in this matter; (3) an order temporarily restricting transfer of Defendants' assets to preserve Plaintiff's rights to an equitable accounting; (4) an order for expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to the manufacture, distribution, offer for sale and sale of

counterfeit Plaintiff Products and Defendants' financial accounts; and (5) an order allowing service of process by electronic mail.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Intellectual Property

Ryder Clips Unlimited, Inc. ("Ryder Clips") is a Florida corporation that produces and markets specially designed safety and other accessories for motorcycle riders, one of which is a product designed to protect rider's feet and/or shoes from damage or accidentally getting dangerously stuck on the motorcycle machinery while in use. These products are sold under the registered SHIFT SOCK Mark ("SHIFT SOCK Products" or "Products"). The SHIFT SOCK has become enormously popular, driven by high-quality standards, and the product's innovative, unique, and helpful design featuring soft materials that aid in comfort, safety, and protection of riding boots and other footwear.  The SHIFT SOCK Mark is displayed prominently on SHIFT SOCK Products and authentic products feature the Ryder Clips Unlimited mark on them as well.

Plaintiff owns the SHIFT SOCK Mark which have been used exclusively and continuously by Plaintiff.  *See* Declaration of Daniel Ryder at ¶¶ 6, 8.  The mark is displayed prominently on Ryder Clips's Products, webpages, and marketing. Ryder Clips has expended great effort to create and promote the SHIFT SOCK Products and these efforts have resulted in substantial sales of Ryder Clips's Products and recognition for their SHIFT SOCK Products and other innovative products.  *See* Declaration of Daniel Ryder at ¶ 6-8.

### B.    Defendants' Illegal Activities

Defendants almost exclusively advertise their Counterfeit Products on the infringing websites by referring to their Products as SHIFT SOCK goods, or a confusingly similar derivative thereof such as SHIFTER SOCK or SHIFT <random adjective> SOCK, and failing to

disclose that their goods are unlicensed knock-offs so that consumers are unaware that they are not buying genuine SHIFT SOCK Products. *See* Declaration of Daniel Ryder at ¶ 11.

Plaintiff reviewed and confirmed that imitation knock-offs were being offered for sale to residents of the United States and the State of Illinois. *Id.* at ¶ 12. Plaintiff also visited each of the Infringing Webstores and confirmed that Defendants and the Infringing Websites do not conduct business with Plaintiff and do not have the right or authority to use the SHIFT SOCK Mark. *Id.* at ¶¶ 11-16. Unknowing customers mistakenly believe the Infringing Webstore listings to be authorized listings, outlet stores, or wholesalers selling genuine SHIFT SOCK Products due to their infringing use of the SHIFT SOCK Mark. *Id.* at ¶¶ 12-16.

Further, the knock-offs all share particular aspects of the SHIFT SOCK official designs, including the colors and overall design. *Id.* at ¶6. The fact that the physical design of the Products is shared by large portions of the Defendants indicates a common manufacturer supplying these Defendants.

Upon information and belief, each of the Defendants, are working in active concert with an unknown manufacturing entity located in China to knowingly and willfully make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use the same infringing product. *See* Exhibits 1 and 2.

Due to the nature of the Defendants' illegal counterfeiting activities, monetary damages cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss of control and damage to Plaintiff's reputation and goodwill that have been meticulously cultivated among the consuming public for the many years that Plaintiff has sold the Products. *See* Declaration of Daniel Ryder at ¶¶ 9, 11, 13-15.

Further, Plaintiff's goodwill and reputation are irreparably damaged when the SHIFT SOCK Mark are used on goods not authorized, produced, or manufactured by the Plaintiff. *Id.* at

4

¶¶ 14, 15, 17. This leads to brand confidence being damaged, resulting in loss of future sales and market share. *Id.* It is difficult to ascertain or calculate the extent of harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence. *Id.* at ¶¶ 15, 16. Counterfeiters, like Defendants, take away the Plaintiff's ability to control the nature and quality of the Products sold, as well as consumer expectations regarding the goods' quality and fitness for a particular purpose and thereby further irreparably harm Plaintiff through their Defendants' illegal use of the SHIFT SOCK Mark. *Id.* at ¶¶ 14, 16. Loss of quality control over goods bearing the SHIFT SOCK Mark and, in turn, loss of control over Plaintiff's reputation, is neither calculable nor precisely compensable. *Id.* at ¶ 16.

Acting in concert, Defendants employ certain tactics to conceal their identities, such as utilizing common logistics with shared untraceable tracking numbers through Chinese and U.S. postal services, as well as the full scope of their counterfeiting operation. These efforts make it virtually impossible for Plaintiff to learn Defendants' true identities. These kinds of Defendants, namely those that fence counterfeit goods online, use judicial notice to abscond with their ill-gotten profits beyond the effective reach of rights owners seeking to enforce their rights.

### III.  ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing, and will continue to cause, irreparable harm to Plaintiff's reputation and the goodwill symbolized by the SHIFT SOCK Mark. The Defendants willfully violate Plaintiff's trademark rights by manufacturing knock-off SHIFT SOCK Products, duping consumers into believing the counterfeit Products are authorized and/or genuine SHIFT SOCK Products and coordinating their activities to produce and fence the counterfeit Products.

To stop Defendants' sale of counterfeit SHIFT SOCK Products, Plaintiff respectfully requests that this Court issue a temporary restraining order ordering, among other things, the

freezing of Defendants' assets and Webstores. Without the relief requested by Plaintiff's Motion, Defendants' illegal activities will continue unabated, and Plaintiff and consumers, including those in the Northern District of Illinois, will suffer irreparable harm.

### A. This Court Has Jurisdiction Over the Parties and Subject Matter

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. §1051 *et seq*., 28 U.S.C. §§1338(a)-(b), and 28 U.S.C. §1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. §1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in Illinois and cause harm to Plaintiff's business within the Northern District of Illinois. Each Defendant targets Illinois residents and has offered to sell, and on information and belief, has sold and continues to sell his/her Products to consumers within the State of Illinois.

Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc*. 623 F.3d 421, 423 (7th Cir. 2010); *see also, Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

Furthermore, Illinois courts regularly exercise personal jurisdiction over websites offering for sale and selling infringing and counterfeit merchandise to Illinois residents over the

Internet. 735 ILCS 5/2-209(a)(2); *See, e.g., Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, 2010 WL 4877708, 4 (N.D. Ill. 2010) ("To sell an infringing article to a buyer in Illinois is to commit a tort in Illinois sufficient to confer jurisdiction under the tort provision of the long-arm statute. Intellectual property infringement takes place in the state of the infringing sales ... for purposes of tort provisions of the Illinois long arm-statute."); *Illinois v. Hemi Group LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (defendants stood ready and willing to do business with Illinois residents, and in fact, knowingly did do business with Illinois residents by selling Products to Illinois residents); *Deckers Outdoor Corp. v. Does 1-55, et al.*, No. 1:11-cv-00010, (N.D. Ill. Oct. 14, 2011) (personal jurisdiction properly asserted against defendants who offered to sell and sold counterfeit Products to Illinois residents through an Internet website).

Through at least the fully interactive commercial Internet Websites and Webstores operated by each Defendant, each of the Defendants has targeted and solicited sales form Illinois residents by offering shipping to Illinois and, in information and belief, have sold counterfeit Plaintiff Products to residents of Illinois. Nair Decl. at ¶ 5. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

### B.     A Temporary Restraining Is Customary and Appropriate

In cases like this one, Courts now regularly issue temporary restraining orders due to the covert nature of offshore counterfeiting activities and the vital need to establish an economic disincentive for trademark infringement and counterfeiting. *See, e.g., Oakley, Inc. v. Does 1-100;* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) (Granting *ex parte* Temporary Restraining Order); *True Religion Apparel, Inc. v. Does 1-100;* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) (same); *Coach, Inc., et al. v. Does 1-100*, No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished); *Tory Burch LLC v. Zhong Feng, et al.*, No. 1:12-cv-09066 (N.D.

7

Ill. Nov. 15, 2012); *Tory Burch LLC v. Does 1-100*, No. 1:12-cv-07163 (N.D. Ill. Sept. 14, 2012); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-1,281*, No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-101*, No. 1:11-cv- 07970 (N.D. Ill. Nov. 15, 2011) (unpublished); *Deckers Outdoor Corp. v. Does 1-55*, No. 1:11- cv-00010 (N.D. Ill. Feb. 3, 2011) (unpublished); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*, No. 1:10-cv-01630-AKH (S.D.N.Y. Mar. 16, 2010) (unpublished); *see also, Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463 (E.D. Mich. 2000); *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001) (Moran, J.); and *In re Vuitton et Fils S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Rule 65(b) of the Federal Rules of Civil Procedure provides that that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. FED. R. CIV. P.  65(b).

Here, the Defendants fraudulently promote, advertise, offer to sell, and sell goods bearing counterfeits of the SHIFT SOCK Mark.  Nair Decl. at ¶ 5.  Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving consumers into believing that the goods for sale on the Defendants' websites are sponsored or endorsed by Plaintiff, or that the websites are authorized distributors of genuine Plaintiff Products.  In reality, they use cheaper plastics and dyes, resulting in fewer uses before degradation and thereby harm Plaintiff by associating Plaintiff's authentic goods with shoddy competing products usurping and poisoning Plaintiff's goodwill.

8

In the absence of a temporary restraining order without notice, Defendants can and likely will sell their remaining collection of SHIFT SOCK counterfeits and will do so by modifying content, changing hosts, and moving any assets from U.S.-based accounts, including Amazon, Wish, eBay, DHGate, AliExpress, Alibaba, and other Webstore hosts, Internet banking, and payment system accounts.

As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order at this juncture.

### C.    Standard for Temporary Restraining Order and Preliminary Injunction

The standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, 87 F.Supp.3d 874, 877 (N.D. Ill. 2015) (citing *Long v. Board of Educ., Dist. 128*, 167 F.Supp.2d 988 (N.D. Ill. 2001)). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in "the sliding scale approach" -- the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position. *Id.* The

sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 896.

### D. Plaintiff Will Likely Succeed on the Merits

      i. <u>Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claims</u>

The greater the movant's likelihood of succeeding on the merits, the less the balance of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce, any reproductions, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods ... which such use is likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C. § 1114(1). Indeed, Plaintiff need only demonstrate a "better than negligible" chance of success on the merits of at least one of its claims, a standard the Seventh Circuit has characterized as a "low requirement." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA*, 549 F.3d 1079, 1096 (7th Cir. 2008).

The Plaintiff's *prima facie* case requires proving that: (1) its mark is distinctive enough to be worthy of protection; (2) Defendants are not authorized to use the Plaintiff's SHIFT SOCK Mark or any confusingly similar variants thereof; and (3) Defendants' use of the Plaintiff's Mark causes a likelihood of confusion as to the origin or sponsorship of Defendants' Products. *See Neopost Industrie B.V. v. PFE Int'l Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted). Plaintiff satisfies all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.

Here Plaintiff's SHIFT SOCK Mark is inherently distinctive and registered with the United States Patent and Trademark Office on the Principal Register. The SHIFT SOCK Mark has been used exclusively and continuously by Plaintiff since 2008. *See* Declaration of Daniel Ryder at ¶ 6. Furthermore, Plaintiff has never licensed or given any of the Defendants the right to use Plaintiff's SHIFT SOCK Mark. *See* Declaration of Daniel Ryder at ¶¶ 11, 13. Thus, the first two elements are clearly satisfied.

As far as the third element, counterfeit goods – those bearing a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark" – are presumed to create a likelihood of confusion. 15 U.S.C. § 1127; *see Coach Inc., et al. v. The Treasure Box, Inc.*, No. 3:11 CV 468, 2013 U.S. Dist. LEXIS 76607, at *10-11 (N.D. Ind. May 31, 2013) (collecting cases recognizing that counterfeit goods are presumed to create a likelihood of confusion). Plaintiff's screenshot evidence demonstrates that Defendants are marketing counterfeit SHIFT SOCK goods that appear to be identical or similar to the authentic products.

Despite the favorable presumption, Plaintiff can also satisfy the Seventh Circuit's seven factor test for likelihood of confusion: (1) similarity between the Mark in appearance and suggestion; (2) similarity of the Products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of defendants to palm off their Products as that of another. *Eli Lilly*, 233 F.3d at 461 (citation omitted). These factors are not a mechanical checklist, and "[t]he proper weight given to each will vary from case to case." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996). At the same time, although no one factor is decisive, the similarity of the Mark, the intent of the defendant, and evidence of actual confusion are the most important considerations. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

11

In this case, Plaintiff plainly satisfies any likelihood of confusion test. The Defendants are selling low-quality counterfeit versions of Products that are similar to Plaintiff's Products and use counterfeit Mark identical or substantially similar to the SHIFT SOCK Mark. Nair Decl. at ¶ 5. They each have a substantially similar or identical design, shape, and function. *See generally* "Screenshot Exhibit", Declaration of Daniel Ryder, Ex. 2. As such, the first and second confusion factors weigh heavily in favor of Plaintiff.

Next, Plaintiff satisfies the third factor, namely, area and manner of concurrent use because the Defendants share a common promotional, distribution, and sales platform for their counterfeit goods, namely internet commerce. When considering the third factor, a court looks as "whether there is a relationship between the use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g Inc.*, 267 F.3d 660, 681 (7th Cir. 2001).

Further still, a court looks at whether the parties use the same channels of commerce, target the same general audience, and/or similar marketing procedures. *Id.* Here both Plaintiff and Defendants advertise and sell their Products to consumers via the Internet and webstores. Both parties use the same means and channels of commerce to target the same Internet consumers looking for genuine Plaintiff Products. The Defendants' webstores advertise and sell counterfeit Plaintiff Products online, just as Plaintiff advertises and sells genuine SHIFT SOCK Products online. Thus, because Defendants target the same Internet consumers by the same means as Plaintiff, this factor also weighs heavily in favor of Plaintiff.

Regarding the fourth factor, degree of consumer care, here, the consumer base is a diverse group of people focused on consumer accessories for motorcyles. None of these parts need to be assembled, so no expertise is required. The end user merely slides the accessory over the gear shifter of the motorcycle and obtains protection for themselves, the bike, and their footwear. "[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably

prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union*, 142 F. Supp. 2d at 1043 (citation omitted). Plaintiff's consumers are very likely to be confused by the use of the identical mark for counterfeit goods, so this factor favors the Plaintiff.

As for the sixth factor, Plaintiff does not need to prove likelihood of confusion with evidence of actual confusion; instead, it merely needs to show *some* evidence of potential confusion. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir. 1995). In this case, actual confusion can be inferred because Defendants are selling counterfeit versions of Plaintiff's Products that use the SHIFT SOCK Mark or a confusingly similar derivative. Because the goods as advertised look identical and Defendants utilize the SHIFT SOCK Mark in their listings, consumers will be confused and think that Defendants' Products are genuine Plaintiff Products or are sponsored or endorsed by the Plaintiff. This factor weighs in favor of Plaintiff.

Regarding the seventh and final factor, Defendants are intentionally using the SHIFT SOCK Mark to confuse and deceive the consuming public into thinking that Defendants' counterfeit Products are manufactured by or emanate from Plaintiff. Defendants are purposefully attempting to benefit and trade off of Plaintiff's goodwill and reputation. Therefore, the final factor regarding Defendants' intent also weighs heavily in Plaintiff's favor.

In sum, each of the seven likelihood of confusion factors weighs heavily in favor of the Plaintiff, and, therefore, Plaintiff has proved it has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim.

   ii.  <u>Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim</u>

A plaintiff bringing a false designation of origin claim 15 U.S.C. § 1125 (a) must show that: (1) defendant used a false designation of origin in connection with Products; (2) defendant's use of the Products was in interstate commerce; and (3) there is a likelihood that consumers will be confused by defendant's false designation of origin. *Web Printing Controls Co., Inc. v. Oxy-*

*Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990). The test to be used in determining whether a

violation has occurred is whether "the evidence indicates a likelihood of confusion, deception or

mistake on the part of the consuming public." *Id.* at 1205 (citation omitted). This is the same

test that is used for determining whether trademark infringement has occurred under the Lanham

Act. *See Neopost*, 403 F. Supp. 2d at 684. Because the SHIFT SOCK Mark is a registered mark,

and Plaintiff has established a likelihood of success on the merits of its trademark infringement

and counterfeiting claim against Defendants (*supra*), a likelihood of success on the merits for

Plaintiff's false designation of origin claim is also established.

      iii.    <u>Plaintiff Is Likely to Succeed on Its Illinois Uniform Deceptive Trade<br>Practice Act Claim</u>

In Illinois, courts resolve unfair competition and deceptive trade practice claims

"according to the principles set forth in the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F.

Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same

analysis to state based infringement claims. *Id.* at 579 (*citation omitted*). The determination as

to whether there is a likelihood of confusion is similar under both the Lanham Act and the

Illinois Uniform Deceptive Trade Practice Act. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F.

Supp. 2d 665, 681 (N.D. Ill. 1998).

To prevail on a false-advertising claim under the Lanham Act, a plaintiff must satisfy the

following elements: (1) a false or misleading statement of fact; that is (2) used in a commercial

advertisement or promotion; that (3) deceives or is likely to deceive in a material way; (4) in

interstate commerce; and (5) has caused or is likely to cause competitive or commercial injury to

the plaintiff. 15 U.S.C. § 1125(a)(1).

Because Plaintiff has established a likelihood of success on the merits of likelihood of

confusion in its trademark infringement and counterfeiting claim against Defendants, and the

14

standard is the same under Illinois law, Plaintiff has established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

   **E.    Plaintiff is Entitled to Preliminary Relief And There Is No Adequate Remedy at Law and Plaintiff Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief.**

   "A plaintiff seeking [an] injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of…likelihood of success on the merits…in the case of a motion for a preliminary injunction or temporary restraining order." 15 U.S.C. § 1116(a) (as amended by the Trademark Modernization Act of 2020).

   Beyond the rebuttable presumption, the Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir.2000)); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley-- Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977).

   "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979). Plaintiff's federal registration constitutes *prima facie* evidence of Plaintiff's exclusive nationwide ownership of the SHIFT SOCK Mark. 15 U.S.C. § 1115(a); *CAE, Inc.*, 267 F.3d at 673.

15

Defendants' unauthorized use of the SHIFT SOCK Mark has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. *See* Declaration of Daniel Ryder at ¶¶ 15, 16, 17, 18. The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages.") As such, Plaintiff should be granted preliminary relief. Plaintiff should be granted immediate *ex-parte* injunctive relief to stem this harm and maintain the *status quo*.

### F.  The Balancing of Harms Tips in Plaintiff's Favor

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the irreparable harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Plaintiff will suffer if relief is denied. *TY, Inc.*, 237 F.3d at 895.

The balancing of harms tips decidedly in the Plaintiff's favor. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the Mark of another for similar goods acts at his own peril since he

16

has no claim to the profits or advantages derived thereby." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla.1992) (internal quotation Mark omitted). *Gallery House, Inc. v. Yi*, 582 F. Supp. 1294, 1298 (N.D. Ill. 1984) (the possibility that a defendant will lose profits "merits little equitable consideration;" and, an infringer has no "standing to complain that his vested interest will be disturbed").

Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996).

Further, to the extent Defendants would be harmed at all by an injunction, that harm is far outweighed by the immeasurable damage that would be done to the Plaintiff if Defendants were to divest themselves of the counterfeit SHIFT SOCK Products in Defendants' possession, both making some of the Plaintiff's most significant remedies futile and potentially depriving the Plaintiff of the assets generated from the sale of infringing works. Therefore, the balance of harms favors the Plaintiff.

As Plaintiff has demonstrated, Defendants have been profiting from the sale of infringing and counterfeit Plaintiff Products by using the SHIFT SOCK Mark. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### G.    Issuance of the Injunction If in the Public Interest

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal trademark law. The public is currently under the false impression that Defendants are selling legitimate SHIFT SOCK goods. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469.

Federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *see also Shashi, Inc. v. Ramada Worldwide, Inc.*, No. 7:05-cv- 00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion").

In this case, the injury to the public is readily apparent, and the injunctive relief which Plaintiff seeks is specifically intended to remedy that injury by dispelling public confusion. The public has the right not to be confused or defrauded as to the source of the goods offered by Defendants. Unless Defendants' continuing unauthorized use of the SHIFT SOCK Mark is enjoined, the public will continue to be confused and misled by Defendants' conduct.

Finally, local Chicagoland SHIFT SOCK fans and motorcycle enthusiasts are also harmed by buying poorly constructed imitations when they actually wanted the authentic Products.

For all of these reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of Temporary Restraining Order is in the public interest.

## IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark ...." 15 U.S.C. § 1116(a). The Plaintiff has sufficiently proven all four elements required to establish the necessity of a preliminary injunction. As described

above, if Defendants are given formal notice of the Plaintiff's request for injunctive relief, they are the sorts of defendants who would likely hide, move, or destroy evidence. *See Century Home Entmt. Inc. v. Laser Beat, Inc.*, 859 F. Supp. 636, 638–639 (E.D.N.Y. 1994) ("it is the norm in this district that where a danger of destruction or hiding of the evidence exists to grant ex parte orders of seizures . . .. Plaintiff need not show that a particular defendant would not adhere to a TRO but rather only that someone like the defendant would be likely to hide or destroy the evidence of his infringing activity").

Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Finally, under FED. R. CIV. P. 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries, online marketplaces, and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. The facts in this case warrant such relief.

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Illegal Use of Plaintiff's Intellectual Property is Appropriate

Plaintiff requests an order requiring the Defendants to immediately cease all use of the SHIFT SOCK Mark or substantially similar Mark on or in connection with all Defendants' websites, webstores, or listings. Such relief is necessary to stop the ongoing harm to the SHIFT SOCK Products, Mark, and goodwill, and to prevent the Defendants from continuing to benefit from their illegal use of the SHIFT SOCK Mark. The need for *ex parte* relief is magnified in today's global economy where counterfeiters, infringers, and other nefarious tortfeasors can operate over the Internet in an anonymous fashion. Further exacerbating this divide is the

pandemic which has shifted almost all purchasing behavior to internet buying and counterfeiters have taken note.

Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant websites used to distribute counterfeit or infringing Products. A Temporary Restraining Order facilitates a just outcome for the trademark owner - Plaintiff.

Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademark and counterfeiting. *See, e.g.*, *Oakley, Inc. v. Does 1-100*; No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) (granting *ex parte* Application for Temporary Restraining Order); *True Religion Apparel, Inc. v. Does 1-100*; No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) (same); *Tory Burch LLC v. Zhong Feng, et al.*, No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Coach, Inc., et al. v. Does 1-100*, No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Tory Burch LLC v. Does 1-100*, No. 1:12-cv-07163 (N.D. Ill. Sept. 14, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-1,281*, No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1- 101*, No. 1:11-cv-07970 (N.D. Ill. Nov. 15, 2011) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-55*, No. 1:11-cv-00010 (N.D. Ill. Feb. 3, 2011) (unpublished) (same); *Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.*, No. 1:10-cv-09336-DAB (S.D.N.Y. Jan. 4, 2011) (unpublished) (same); *Farouk Sys., Inc. v. Eyou Int'l Trading Co., Ltd.*, No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (unpublished) (same); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*, No. 1:10-cv-01630-AKH (S.D.N.Y. Mar. 16, 2010) (unpublished) (same); *Chanel, Inc. v. Does 1-172*, No. 2:10-cv-02684-STA-dkv (W.D. Tenn. Nov. 4, 2010) (unpublished) (same); *Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d at 463 (enjoining Defendant from "using in any way the Internet domain name

20

'fordrecalls.com' "); *Kraft Food Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 956 (N.D. Ill. 2002) (granting preliminary injunction requiring defendant to "immediately" remove all references to version of plaintiff's mark, including removing all references "from metatags, metanames, or any other keywords on his websites").

In this case, Defendants' primary method of driving consumer traffic to the Infringing Websites and maximizing sales of the Counterfeit Products is through the unlawful use of the SHIFT SOCK Mark. If immediate injunctive relief is granted, any inconvenience or confusion experienced by users trying to locate Plaintiff's Products will be minimized, a primary goal of the Lanham Act. In balancing the harms to the parties, any likelihood of harm to Defendants is significantly outweighed by the likelihood of harm to Plaintiff if immediate injunctive relief is not issued.

### B. An Order Preventing the Fraudulent Transfer of Assets Is Appropriate

In order to preserve Plaintiff's right to an equitable accounting of Defendants' profits from counterfeit sales, Plaintiff requests an *ex parte* restraining order on those profits. Issuing an *ex parte* order will ensure Defendants' compliance. If such an order is not issued in this case, Defendants almost certainly will abscond will their ill-gotten profits and fraudulently transfer financial assets to oversees accounts before an order is issued. Specifically, upon information and belief, the Defendants in this case hold most of their assets in The People's Republic of China, making it easy to hide or dispose of assets upon learning of the litigation, which will render equitable remedies, including an accounting by Plaintiff, meaningless.

Plaintiff has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claims, so according to the Lanham Act. 15 U.S.C. § 1117, Plaintiff is entitled to an accounting and recovery of profits, damages, and costs from Defendants' infringing actions and sales of counterfeit SHIFT SOCK Products.

In *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992), the Ninth Circuit affirmed the district court's ruling limiting the transfer of assets and explicitly stated that "because the Lanham Act authorizes the district court to grant [plaintiff] an accounting of [defendant's] profits as a form of final equitable relief, the district court had the inherent power to freeze [defendant's] assets in order to ensure the availability of that final relief." *See also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ("A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case.").

Following *Reebok* and *Levi Strauss & Co.*, the Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D.Ill. Nov. 8, 2005). The Court, citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940))). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the assets. *Id.*

In addition, courts in this district and across the country regularly issue asset restraining orders for entire financial accounts in cases involving the sale of counterfeit Products. *See, e.g.*, *Oakley, Inc. v. Does 1-100*; No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) (Order granting *Ex Parte* Application for Temporary Restraining Order including the freezing of

Defendants' financial accounts); *True Religion Apparel, Inc. v. Does 1-100*; No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) (same); *Tory Burch LLC v. Zhong Feng, et al.*, No. 1:12-cv- 09066 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Coach, Inc., et al. v. Does 1-100*, No. 1:12- cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Tory Burch LLC v. Does 1-100*, No. 1:12- cv-07163 (N.D. Ill. Sept. 14, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-1,281*, No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-101*, No. 1:11-cv-07970 (N.D. Ill. Nov. 15, 2011) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-55*, No. 1:11-cv-00010 (N.D. Ill. Feb. 3, 2011) (unpublished) (same); *Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.*, No. 1:10-cv-09336-DAB (S.D.N.Y. Jan. 4, 2011) (unpublished); *Farouk Sys., Inc. v. Eyou Int'l Trading Co., Ltd.*, No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (unpublished); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*, No. 1:10-cv-01630-AKH (S.D.N.Y. Mar. 16, 2010) (unpublished).

Furthermore, Federal Rules of Civil Procedure 64 and 65 provide authority for preliminary injunctions and the freezing of assets, and the Lanham Act provides for an accounting and recovery of profits, costs, and damages. FED. R. CIV. P. 64-65; 15 U.S.C. § 1117. Since Plaintiff seeks recovery of Defendants' profits, an order permanently and continuously freezing the Defendants' assets is within the Court's authority and should be granted. *Lorillard*, 2005 WL 3115892 at *13. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with the Defendants that are given notice of the order to freeze assets of the Defendants. FED. R. CIV. P. 65.

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

## V.   PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* FED. R. CIV. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As demonstrated above, Plaintiff is being irreparably harmed by the manufacture, importation, offering for sale, distribution, and sale of counterfeit Plaintiff Products. Defendants have gone to great lengths to conceal their true identities and/or move outside of this Court's reach by, among other things, excluding any identifiable information from Defendants' Webstores. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests an *ex parte* Order allowing expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order

has been limited to include only that which is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with the Defendants that are given notice of the order to provide expedited discovery in this action. FED. R. CIV. P. 65. Plaintiff is not aware of any reason that Defendants or third parties can not comply with these expedited discovery requests without undue burden. More importantly, as Defendants have engaged in many deceptive practices in an effort to hide their identities and accounts, Plaintiff's seizure and asset restraint Order may have little meaningful effect without the requested relief. There is evidence that Defense websites have run articles about Plaintiff's other unsealed case, uniting otherwise disparate counterfeiting cells to deny Plaintiff an adequate remedy for seeking to protect its intellectual property. *See* Pl.'s Compl. Ex. 3 (Dkt. #3-2).

Accordingly, Plaintiff respectfully requests that the expedited discovery be granted.

## VI. SERVICE OF PROCESS BY EMAIL IS WARRANTED IN THIS CASE

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests an order allowing service of process by electronically sending the Complaint, this Order, and other relevant documents via Defendants' Webstore registration emails, any known or discovered e-mail related to the webstore listed in the Complaint as well as publishing a link to a website where Defendants can download those filings as well as any other future service filings. FED. R. CIV. P. 4. Plaintiff submits that, particularly in this day and age and in this matter involving internet merchants who rely on e-mail communication, providing notice via e-mail and electronic publication is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections. Further, third

party merchant platforms provide their own notice to each individual account holder subject to the TRO.

Electronic service is appropriate and necessary in this case because the Defendants, on information and belief: (1) have not provided names and physical addresses in the public contact information to their respective Webstores; and (2) rely primarily on electronic communications to communicate with customers, demonstrating the reliability of this method of communication by which the Defendant may be apprised of the pendency of this action.

Plaintiff respectfully submits that an order allowing service of process via e-mail in this case will benefit all parties and the Court by ensuring that the Defendants receive immediate notice of the pendency of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve the Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue a remedy.

Despite not providing reliable physical contact information directly to consumers, the Defendants, as online merchants, must utilize email to communicate with consumers. Moreover, Defendants must maintain contact with their online Webstore host company accounts to ensure they are functioning and to communicate with customers electronically. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods and that such service methods will ensure Defendant is apprised of the action and the nature of the claims therein sufficient to provide due process.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the

defendant, like the Defendants here, conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Similarly, a number of Courts, including the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service and electronic publication, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; *see also, e.g.*, *Oakley, Inc. v. Does 1-100*; No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) (Order granting *Ex Parte* Application for Temporary Restraining Order including service of process by electronic publication and electronic mail); *True Religion Apparel, Inc. v. Does 1-100*; No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) (same); *Tory Burch LLC v. Zhong Feng, et al.*, No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished); *Coach, Inc., et al. v. Does 1-100*, No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished); *Tory Burch LLC, et al. v. Does 1-100*, No. 1:12-cv-07163 (N.D. Ill. Sept. 14, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-1,281*, No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-101*, No. 1:11-cv-07970 (N.D. Ill. Nov. 15, 2011) (unpublished); *Deckers Outdoor Corp. v. Does 1-55*, No. 1:11-cv-00010 (N.D. Ill. Feb. 3, 2011) (unpublished); *MacLean- Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Farouk Sys., Inc. v. Eyou Int'l Trading Co., Ltd.*, No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (unpublished); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*, No. 1:10-cv-01630-AKH (S.D.N.Y. Mar. 16, 2010) (unpublished); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting Rio, 284 F.3d at 1018) (allowing e-mail service); *see also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1- 2,

(D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances ... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure"). Plaintiff submits that allowing service e-mail in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the Defendants to conduct their illegal Internet-based activities anonymously.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props. v. Rio Intern. Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002). As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* As such, this Court may allow Plaintiff to serve the Defendants via email.

Additionally, Plaintiff is unable to determine the exact physical whereabouts or identities of the Defendants due to their lack of contact information on their Webstores. Plaintiff, however, has good cause to suspect the Defendants are residents of China. The United States and the People's Republic of China are both signatories to The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Convention"). Nevertheless, United States District Courts, including in this District, have routinely permitted alternative service of process notwithstanding the applicability of The Hague Convention. *See e.g.*, *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009)

("plaintiffs are not required to first attempt service through the Hague Convention."); *see also In re LDK Solar Secs. Litig.*, 2008 WL 2415186, *2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community").

In addition, the law of the People's Republic of China does not appear to prohibit electronic service of process. As such, Plaintiff respectfully requests this Court's permission to serve Defendants via email or electronic publication.

## VII.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or permanent injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411 (4th Cir. 1999).

Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g., Oakley, Inc. v. Does 1-100*; No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) ($10,000 bond); *True Religion Apparel, Inc. v. Does 1-100*; No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) ($10,000 bond); *Tory Burch LLC v. Zhong Feng, et al.*, No. 1:12-cv-09066 (N.D.

Ill. Nov. 15, 2012) (unpublished) ($10,000 bond); *Coach, Inc., et al. v. Does 1-100*, No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) ($10,000 bond); *Tory Burch LLC v. Does 1-100*, No. 1:12-cv- 07163 (N.D. Ill. Sept. 14, 2012) (unpublished) ($10,000 bond); *Deckers Outdoor Corp. v. Does 1- 100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished) ($10,000 bond); *Deckers Outdoor Corp. v. Does 1-1,281*, No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) ($10,000 bond); *Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.*, 482 F. Supp. 2d 1065, 1078 (E.D. Wis. 2007) ($1,000 bond); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 456 (7th Cir. 2010) ($10,000 bond); *True Religion Apparel, Inc., v. Xiaokang Lee*, No. 1:11-cv-08242-HB (S.D.N.Y. Nov. 18, 2011) (unpublished) ($10,000 bond); *The Nat'l Football League v. Chen*, No. 1:11-cv- 00344-WHP (S.D.N.Y. Jan. 31, 2011) ($10,000 bond); *Farouk Sys., Inc. v. Eyou Int'l Trading Co Ltd.*, No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (unpublished) ($10,000 bond); *Chanel, Inc. v. Zhixian*, No. 0:10-cv-60585-JIC (S.D. Fla. Apr. 21, 2010) (unpublished) ($10,000 bond); *Chanel, Inc. v. Paley*, No. 3:09-cv-04979-MHP (N.D. Cal. Nov. 13, 2009) (unpublished) ($10,000 bond); *Gucci Am., Inc. v. Curveal Fashion*, No. 1:09-cv-08458-RJS-THK (S.D.N.Y. Oct. 9, 2009) (unpublished) ($10,000 bond).

## VIII. CONCLUSION

Defendants' counterfeiting operations and trademark infringement are irreparably harming Plaintiff's business, its SHIFT SOCK Mark, and its consumers. Without entry of the requested relief, Defendants' sale of the counterfeit Products will continue to lead prospective purchasers and others to believe that Defendants' counterfeit Products have been manufactured by or emanate from Plaintiff, when in fact, they have not.

Therefore, entry of an *ex parte* order is necessary to protect Plaintiff's trademark rights, and to prevent further irreparable harm to Plaintiff and the consuming public, and to preserve the *status quo*. In view of the foregoing and consistent with previous similar cases, Plaintiff

respectfully requests that this Court enter a temporary restraining order in the form submitted herewith and set a status hearing before the expiration of the temporary restraining order at which hearing Plaintiff intends to present a motion for preliminary injunction.

Based upon the foregoing, the Plaintiff respectfully requests: (1) an *ex parte* temporary restraining order preventing Defendants from advertising, offering for sale, selling, distributing, transferring, assigning, destroying, or concealing any SHIFT SOCK Products, copies of SHIFT SOCK Products that are in Defendants' possession, or Products or using the SHIFT SOCK Mark or using a substantially and/or confusingly similar mark to the SHIFT SOCK Mark; (2) an order temporarily disabling the Infringing Webstore listings pending the issuance of a final judgment in this matter; (3) an *ex part*e temporary restraining order preventing the fraudulent transfer of Defendants' assets (4) an order for expedited discovery allowing the Plaintiff to inspect and copy Defendants' records and materials relating to SHIFT SOCK , including those held by third-parties; and, (5) an Order authorization service of process via email under Rule 4(f)(3).

Dated:   July 9, 2024                                    Respectfully Submitted,

By: _____ /s/ Rishi Nair
Rishi Nair
ARDC # 6305871
Keener & Associates, P.C.
161 N. Clark Street, Suite #1600
Chicago, IL 60601
(312) 375-1573
rishi.nair@keenerlegal.com

31